J-A13005-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| ESTATE OF: JAMES W. PORTER, JR., DECEASED | : IN THE SUPERIOR COURT OF<br>: PENNSYLVANIA<br>:<br>: |
| APPEAL OF: LYNN MARIE HICKMAN | :<br>:<br>:<br>:<br>:<br>: No. 1156 WDA 2025 |

Appeal from the Order Entered August 21, 2025
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-OC-0003532-2024


BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED: AUGUST 6, 2026**

Lynn Marie Hickman ("Daughter") appeals from the order revoking the letters testamentary that had been issued to Daughter based upon the will executed by her late father, James W. Porter, Jr. ("Decedent") in 1996, and instead permitted James W. Porter, III ("Son") to submit Decedent's pour-over will from 2019, with Son to be named as executor. We remand with instructions for the orphans' court to prepare a supplemental opinion addressing Daughter's issues.

By way of background, Decedent died on April 1, 2024, and was survived by his two adult children, Daughter and Son.  As summarized by the orphans' court, "the two children of Decedent have opposing viewpoints as to:  probate of [his] wills of 1996 and 2019; amendments to Decedent's revocable trust during his lifetime; and a deed transferring [Decedent]'s home."  Orphans' Court Opinion, 11/18/25, at 1 (cleaned up).  Specifically, Decedent and his

wife, Alberta B. Porter ("Mother"), executed a will in 1996 ("1996 Will"), which was admitted to probate by Daughter following Decedent's death. Pursuant to the terms of the 1996 Will, Daughter was issued letters testamentary and named executrix of Father's estate. The estate consisted solely of Decedent's residence, located at 120 Dashwood Drive in Penn Hills, Pennsylvania ("the Property").

Relevantly, after the 1996 Will, Decedent transferred the Property to a revocable living trust in the name of himself and Mother ("the Trust"). Michael A. Nahas, Esquire, assisted with the creation and execution of that instrument in September of 2018. Relevantly, the Trust named the parents as co-trustees and the children as successor trustees. It further designated that the Property would pass equally to Daughter and Son, who were both present when the Trust was signed.

Thereafter, Mother became bedridden and Son assumed caretaking responsibilities for his parents. At the time, Daughter worked full-time and Son was unemployed. On October 15, 2019, the parents amended the Trust ("First Amendment") and Decedent executed a pour-over will ("2019 Will"). Specifically, the First Amendment designated Son as the first successor trustee and Daughter as the second successor trustee, but still distributed the Property equally to Daughter and Son. The 2019 Will provided that "if something has to go to probate, just follow the terms of what the [T]rust says as far as the beneficiaries." N.T. Hearing, 4/30/25, at 8. It also revoked the 1996 Will as to Decedent and appointed Son as the executor.

- 2 -

Attorney Nahas drafted both October 15, 2019 documents and served as the notary, while Rosella Johnson and Susan Darocy signed as witnesses to the parents' signatures. Decedent signed the documents in their presence. Attorney Nahas brought the First Amendment to Mother's bedroom to sign. The witnesses did not follow him to her bedroom to visibly witness her signing, but attested by their signatures that she had signed. Attorney Nahas and Ms. Darocy did not perceive any issues regarding Decedent's ability to comprehend what was happening that day. *Id*. at 10, 28-29. Notably, Son secured the witnesses and was present on October 15, 2019, whereas Daughter was unaware of the 2019 Will or First Amendment.

The Trust was amended by Decedent again in May of 2020 ("Second Amendment"), without the involvement of Attorney Nahas. Although it is stated backwards in terms of the original and new versions of the Trust, it appears that the Second Amendment purported to alter the Trust to allow the Property to pass directly to Son upon the parents' deaths. Mother died in December of that year and Son moved in with Decedent. On October 5, 2023, Decedent, as trustee for the Trust, conveyed title to the Property to Son. As with the 2019 documents, Daughter was not apprised at the time of execution of the Second Amendment or 2023 transfer.

On August 27, 2024, while administering Decedent's estate pursuant to the 1996 Will, Daughter filed a petition to void the 2023 transfer of the Property to Son. In response to a rule to show cause why he should not return the Property to the estate, Son filed preliminary objections to Daughter's

standing and a new rule to show cause why the 2019 Will should not be admitted to probate and Son be appointed executor.

Daughter amended her petition, alleging that Decedent lacked the capacity to amend the Trust in 2019 and 2020, and that Son had exerted undue influence in securing the transfer of the Property to himself in 2023. Once again, Son lodged preliminary objections to Daughter's standing and claimed that Daughter had failed to supply sufficient facts for him to address the new allegations. After Daughter responded, the court issued Daughter a rule to show cause why the 1996 Will should not be revoked, the 2019 Will be admitted to probate instead, and letters testamentary be granted to Son so he could be named executor. Daughter replied with additional arguments about the amendments to the Trust.

The court held a hearing on April 30, 2025, at which it heard testimony from Son, Attorney Nahas, Ms. Darocy, Ms. Johnson, and Daughter. Son put forth the 2019 Will, the validity of which Daughter contested. According to Son, Decedent executed the 2019 Will, as well as the First and Second Amendments, based upon the disproportionate level of attention and care between Son and Daughter towards the parents between 2019 and 2020. Son testified that he moved in with Decedent in 2020 so Decedent would not be alone after Mother died, and because Decedent needed help with cooking and minor physical ailments. Daughter asserted that Decedent began to show signs of dementia around 2022. Nevertheless, she agreed that he did not exhibit any cognitive issues in 2019. *Id*. at 91. Son acknowledged that

Decedent's medical records indicated he had symptoms of dementia, but contested Daughter's averment that Decedent suffered from that condition.

In closing arguments, Daughter averred that Son had violated his fiduciary duties and impermissibly executed the Second Amendment without notifying Daughter. *Id*. at 103-04. Furthermore, she argued that Son did not establish the validity of the 2019 Will so as to shift the burden to Daughter to assert undue influence. *Id*. at 105. The parties submitted proposed findings of fact and conclusions of law after the hearing.[1] On August 21, 2025, the court entered the order *sub judice*, which found the 2019 Will valid, revoked the letters testamentary issued to Daughter based upon the now-revoked 1996 Will, and held that Son could submit the 2019 Will to probate and seek to be sworn in as executor.

Daughter filed a motion for reconsideration, challenging the validity of the First Amendment, 2019 Will, Second Amendment, and 2023 transfer. She further contended that the Property was not subject to probate but rather should be distributed pursuant to the initial terms of the Trust with a surcharge

_____

[1] We note that Daughter's filing only appears in the reproduced record. It is well-settled that "our review is limited to those facts which are contained in the certified record" and "the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." **Commonwealth v. Holston**, 211 A.3d 1264, 1275-76 (Pa.Super. 2019) (*en banc*) (cleaned up). Pursuant to Pa.R.A.P. 1926, we direct Daughter to correct this omission by filing a supplemental certified record that includes this document, as well as any others that may have been inadvertently omitted.

imposed upon Son in light of his of self-dealing. The orphans' court did not rule upon the motion.

This timely appeal followed. Daughter failed to respond to the order directing her to file a concise statement pursuant to Pa.R.A.P. 1925(b).[2] Although it lacked notice of the precise issues Daughter wished to raise, the orphans' court authored an opinion setting forth the reasons it found that Daughter had not proven undue influence or weakened intellect as to the 2019 Will. In this Court, Daughter has clarified her intent to pursue the following issues:

I.   Whether the [orphans'] court erred in failing to consider the questions surrounding the validity of the First and Second Amendments . . . and the transfer of [the Property] from the Trust to [Son].

II.  Whether the [orphans'] court erred in failing to issue an order with regard to the Trust.

III. Whether the [orphans'] court erred in revoking the Letters Testamentary issued to [Daughter] and allowing [Son] to be sworn in as Executor of the Estate rather than ordering that the Trustee distribute the net Trust estate equally between [Daughter] and [Son] in accordance with [Father]'s wishes.

---

[2] Normally, the failure to file and serve a court-ordered concise statement results in waiver. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Nevertheless, we decline to deem all her issues waived and will not quash the appeal because the court's order, in contravention to the mandates of Pa.R.A.P. 1925(b)(3)(iii), did not provide the address where she could serve the statement, nor direct that the statement be served upon the judge. *See Rahn v. Consol. Rail Corp.*, 254 A.3d 738, 746-47 (Pa.Super. 2021) (electing not to quash where the trial court's Rule 1925(b) order contained the same errors).

Daughter's brief at 5 (cleaned up).

We begin with the legal principles governing our review of these issues. When the validity of a will is challenged, the court will conduct a hearing, assess the credibility of witnesses, and enter an order as to the contested will's validity. *See Est. of Fabian*, 222 A.3d 1143, 1149 (Pa.Super. 2019). On appeal, "the record is to be reviewed in the light most favorable to [the] appellee, and review is to be limited to determining whether the trial court's findings of fact were based upon legally competent and sufficient evidence and whether there was an error of law or abuse of discretion." *Id*. (cleaned up).

Insofar as Daughter challenges the court's disposition of her claims that Son exerted undue influence over Father in the execution of the above instruments, the following tenets pertain:

> The resolution of a question as to the existence of undue influence is inextricably linked to the assignment of the burden of proof. Once the proponent of the will in question establishes the proper execution of the will, a presumption of lack of undue influence arises; thereafter, the risk of non-persuasion and the burden of coming forward with evidence of undue influence shift to the contestant. The contestant must then establish, by clear and convincing evidence, a *prima facie* showing of undue influence by demonstrating that: (1) the testator suffered from a weakened intellect; (2) the testator was in a confidential relationship with the proponent of the will; and (3) the proponent receives a substantial benefit from the will in question. Once the contestant has established each prong of this tripartite test, the burden shifts again to the proponent to produce clear and convincing evidence which affirmatively demonstrates the absence of undue influence.

*Id*. at 1149–50 (cleaned up). Recognizing that there is no bright-line rule, we have elaborated thusly upon the first prong:

> It is typically accompanied by persistent confusion, forgetfulness and disorientation. Moreover, because undue influence is generally accomplished by a gradual, progressive inculcation of a receptive mind, the fruits of the undue influence may not appear until long after the weakened intellect has been played upon. Accordingly, the particular mental condition of the testator on the date he executed the will is not as significant when reflecting upon undue influence as it is when reflecting upon testamentary capacity. More credence may be given to remote mental history.

*Id*. at 1150 (cleaned up).

Here, the 2019 Will and the First Amendment were drafted by Attorney Nahas on the same date in 2019. He also assisted the parents with creating the Trust in 2018. We have held that "the scrivener of a will, especially if a lawyer," is a crucial witness when the will is contested, "and, where the lawyer knew the testator prior to the execution of [the] will, his testimony showing voluntary and intelligent action by the testator makes out a *prima facie* case that requires very strong evidence to offset it." *Id*. at 1151 (cleaned up).

Finally, we have explained as follows regarding how an individual may amend a trust instrument:

> A settlor may only amend a trust pursuant to the express terms of the trust agreement. A settlor's intent with respect to the power of amendment must be determined from the language contained within the four corners of the trust instrument, the scheme of distribution contemplated therein, and the circumstances surrounding the execution of the trust instrument. This Court will only apply the principles of trust construction when the settlor's intent cannot be determined with reasonable certainty from the language of the trust instrument itself. The settlor's intent to execute a proposed amendment cannot be

offered into evidence for purposes of superseding the unambiguous requirements of a given trust agreement.

*In re Est. of Field*, 953 A.2d 1281, 1286 (Pa.Super. 2008) (cleaned up).

Turning to the issues raised in this appeal, Daughter first argues that the burden should have shifted to Son to disprove undue influence as to the First Amendment, Second Amendment, and 2023 transfer of the Property. *See* Daughter's brief at 18-19. She avers that Son "was in a confidential relationship with . . . Decedent and received the entirety of . . . Decedent's property at a time in which . . . Decedent was suffering from weakened intellect." *Id*. Particularly, Daughter relies upon the absence of a discussion about the validity of the Second Amendment and 2023 transfer in the Rule 1925(a) opinion as "an acknowledgement by the [orphans'] court that said arguments are squarely grounded." *Id*. at 21.

Similarly, Daughter alleges in her second issue that the court failed to rule upon the validity of the 2023 transfer of the Property or the intent of the Trust as to the distribution of the Property. *Id*. at 22. In her view, "[w]hile the [orphans'] court thoroughly explored arguments regarding the validity of the 2019 Will, it failed to consider the fact that the only estate asset is controlled by the Trust, not the 2019 Will." *Id*. at 22. Finally, she posits that the orphans' court neglected to address whether Son engaged in self-dealing as to the 2023 transfer of the Property, in violation of his role as a trustee in and in distribution of the Trust's sole asset, the Property. *Id*. at 24-25.

Upon review, we deduce that the "[c]onspicuously missing" analyses are a result of the orphans' court lacking notice, by way of a Rule 1925(b)

- 9 -

statement, of the issues Daughter intended to raise.  ***See*** Daughter's brief at 21.  Without explicit guidance, the orphans' court focused its opinion on the validity of the 2019 Will and its finding that Daughter had not shifted the burden to Son to disprove undue influence or weakened intellect as to the execution of that instrument.  ***See*** Orphans' Court Opinion, 11/18/25, at 4, 7.  Yet, in this Court, Daughter attacks not the 2019 Will, but the soundness of the First Amendment, Second Amendment, and 2023 transfer of the Property.  The resulting disparity between the assumed issues and what was actually presented to this Court leaves us with a single perfunctory sentence from the opinion of the orphans' court as to its assessment of those issues:  "Likewise, changes to trust documents have similarly proven to be valid, along with the deed transferring the realty to [S]on."  ***Id***. at 9 (footnote omitted).

This summary statement does not convey to us the court's factual findings regarding those instruments, nor does it permit us to review its discretion.  In such a circumstance, we have held:

> [R]ather than attempt to address the merits of the . . . issues . . . raised on appeal without the orphans' court's explanation of its reasons for fashioning the . . . order, we direct the orphans' court to draft a supplemental opinion that outlines the reasons for its order or specifies where in the record such reasons may be found.

***In re I.M.R.***, 296 A.3d 615, 2023 WL 2547953, at *3 (Pa.Super. 2023) (non-precedential decision).  We elect to do the same here.

Accordingly, we remand to the orphans' court to author a supplemental Rule 1925(a) opinion addressing the issues Daughter has raised in her brief

within thirty days of receipt of the certified record. Thereafter, the Prothonotary shall issue a new briefing schedule.

Case remanded with instructions. Jurisdiction retained.